1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10   PHILLIP G. STEPHENS,

11              Petitioner,                    No. CIV S-08-00753 FCD CHS P

12        vs.

13   MIKE KNOWLES, et al.,

14              Respondents.          FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.      INTRODUCTION

17              Petitioner Phillip Stephens is a state prisoner proceeding with counsel with a

18   petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges the June

19   2, 2006, decision by the Board of Parole Hearings (hereinafter Board) finding him unsuitable for

20   parole.  Petitioner argues that the Board's failure to fix his term has resulted in a disproportionate

21   sentence and that the Board's determination was not supported by evidence.  Upon careful

22   consideration of the record and the applicable law, the undersigned will recommend that this

23   petition for habeas corpus relief be denied.

24   /////

25   /////

26   /////

                                          1

II.    FACTUAL AND PROCEDURAL BACKGROUND

A.      Facts

The Board recited the facts of petitioner's commitment offense as follows:

PRESIDING COMMISSIONER SHELTON: Then I think what
I'll do is enter into the record the April 2006 Board Report offense
summary so that there's a basis from which we can be discussing.
It says the following description of the commitment offense is
found in the Probation Officer's report for the Los Angeles County
Case No. A136800 filed on 7/29/77.  The Probation Officer's
report notes that the following information including the DA file,
the Probation Officer's investigation as well as the preliminary
transcript, the material elements in the matter appear to be as
follows: Stephens severely beat the victim, Marianne Henderson,
with a wooden plank in the agricultural area of the Reseda High
School.  Stephens was seen by witnesses with the victim earlier at
a football game at Reseda High School.  Witnesses related that
Stephens appeared to be intoxicated and that he lost his balance on
several occasions.  The beating reportedly took place at
approximately midnight on 9/25/76.  Stephens was - then
reportedly left the scene and was picked up by an adult male, Mr.
Richard Allen Burton, at approximately 12:15 a.m.  After engaging
in homosexual activity with Mr. Burton, Mr. Burton drove
Stephens to the Hollywood area where Stephens visited with Nelly
Smalley and asked about a former girlfriend of his named Kathy.
Stephens returned to Mr. Burton's vehicle and while returning to
go to Burton's house Stephens asked Burton to drive down
Atawanda Street.  Stephens then reportedly stated I have to get
something out of a locker.  Mr. Burton stated that Stephens got out
of the car and climbed the fence and returned after approximately
20 minutes.  They then drove to Mr. Burton's house and arrived
there shortly before 4:00 a.m.  Stephens reportedly remained at Mr.
Burton's house until 11:00 a.m. on 9/25/76.  The District
Attorney's Office maintained that Stephens had sexually molested
the victim by committing an act of sodomy upon her as well as an
act of coital intercourse.  Further the subject had returned to the
scene while being driven by Mr. Burton and reportedly strangled
the victim which caused her death.  Staff members of the
Coroner's Office testified that the principal cause of the victim's
death was strangulation and the secondary cause was massive
traumas and injuries to the victim's head.  In the professional
opinion of the doctors of the Coroner Office - Coroner's Office the
head injuries inflicted on the victim shortly before midnight did
not cause her death but that the strangulation at approximately 3:00
a.m. resulted in the victim's demise.

Answer, Exhibit A, part 2 at 48-50.  At the time of the commitment offense petitioner was 17

and the victim was 15.  Answer, Ex. A, part 1 at 32-36.

1       Petitioner was convicted of first degree murder and began serving a sentence of

2  seven years to life on August 9, 1977.  Answer, Ex. A, part 2 at 39.  His minimum eligible parole

3  date was September 27, 1983.  Id.

4       On June 2, 2006, the Board held a life parole consideration hearing for petitioner.

5  Id.  At the conclusion of that hearing the Board found petitioner unsuitable for parole.  Answer,

6  Ex. A, part 3 at 74.

7      B.    State Habeas Review

8       On July 13, 2007, petitioner filed a petition for writ of habeas corpus in the Los

9  Angeles County Superior Court.  Answer, Ex. A.  That petition was denied in a reasoned opinion

10  on June 22, 2007.  Answer, Ex. B at 2-3.

11       Petitioner then filed a petition with the California Court of Appeal on August 14,

12  2007.  Answer, Ex. C, part 1 at 12, 33.  That petition was summarily denied on August 28, 2007.

13  Answer, Ex. D.  Petitioner finally petitioned the California Supreme Court on September 10,

14  2007.  Answer, Ex. E, part 1 at 12, 33.  That petition was summarily denied on March 12, 2008.

15  Answer, Ex. F.  Petitioner filed this federal petition on April 8, 2008.

16  III.   APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

17       A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

18  some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

19  861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

20  Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

21  interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

22  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

23  corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

24  (1972).

25       This action is governed by the Antiterrorism and Effective Death Penalty Act of

26  1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court shall
> not be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of the
> claim -
>
> (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).  The

court looks to the last reasoned state court decision as the basis for the state court judgment.

Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

IV.    DISCUSSION OF PETITIONER'S CLAIMS

    A.    Disproportionate Sentence

        1)    Description of Claim

Petitioner was 17 at the time of the commitment offense.  Petition at 11.  He

argues that because juvenile offenders bear less moral responsibility for their criminal conduct it

is unconstitutional to punish a juvenile offender to the same extent as an adult.  Id. at 8-10.

Petitioner argues that a juvenile's "maximum term must be shorter than the maximum adult

term" and that he has already served nine years longer then the "maximum matrix term" for an

adult.  Id. at 12.

        2)    Analysis and Discussion

"The Eighth Amendment, which forbids cruel and unusual punishments, contains

a 'narrow proportionality principle' that 'applies to noncapital sentences.' " Ewing v. California,

538 U.S. 11, 20 (2003) (quoting Harmelin v. Michigan, 501 U.S. 957, 996-97 (1991) (Kennedy,

J., concurring)).  "The threshold determination in the eighth amendment proportionality analysis is whether [petitioner's] sentence was one of the rare cases in which a ... comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." United States v. Bland, 961 F.2d 123, 129 (9th Cir.1992), cert denied, 506 U.S. 858 (1992) (citations and quotations omitted; emphasis added); see also Lockyer v. Andrade, 538 U.S. 63, 77 (2003) ("[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case"); Rummel v. Estelle, 445 U.S. 263, 272 (1980) ("Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare.").

A comparison of petitioner's crime and his sentence does not lead to an "inference of gross disproportionality."  See, e.g., Eckert v. Tansy, 936 F.2d 444, 450 (9th Cir.1991) (two consecutive life terms for armed kidnaping not unconstitutionally disproportionate); Hatter v. Iowa Men's Reformatory, 932 F.2d 701, 703 (8th Cir.1991) (mandatory sentence of life in prison without parole not so disproportionate to the crime of kidnaping as to be unconstitutional).

Courts have upheld even more severe sentences for crimes far less heinous than petitioner's.  See Harmelin (life without possibility of parole for possession of 672 grams of cocaine); United States v. Van Winrow, 951 F.2d 1069, 1071 (9th Cir.1991) (life without possibility of parole for possession of cocaine with intent to distribute); Terrebonne v. Butler, 848 F.2d 500, 507 (5th Cir.1988), cert. denied, 489 U.S. 1020 (1989) (life without possibility of parole for 21-year-old heroin addict who delivered packets of heroin to an undercover officer); Holley v. Smith, 792 F.2d 1046, 1051-52 (11th Cir.1986), cert. denied, 481 U.S. 1020 (1987) (life without possibility of parole for recidivistic robber).  Indeed the Supreme Court affirmed sentencing a defendant who committed his crime at the age of 17 to life without the possibility of parole.  See Roper v. Simmons, 543 U.S. 551, 560 (2005).  Additionally the Andrade decision also forecloses petitioner's Eighth Amendment claim.

In Andrade, the Supreme Court acknowledged: "in determining whether a

5

1   particular sentence for a term of years can violate the Eighth Amendment, we have not

2   established a clear or consistent path for courts to follow."  Lockyer v. Andrade, 538 U.S. at 72.

3   Because of this lack of clarity, the Andrade Court found not unreasonable a California court's

4   affirmance of a sentence of 25 years to life for petty theft with a prior theft-related conviction.

5   Id.  The same lack of clarity prevents a conclusion here that the California courts' refusal to

6   interfere with petitioner's sentence was "contrary to" or an "unreasonable application of"

7   "clearly established Federal law as determined by the Supreme Court of the United States."  See

8   28 U.S.C. § 2254(d).

9            For these reasons petitioner is not entitled to relief on this claim.

10       B.   Due Process

11            1)     Description of Claim

12            Petitioner argues that the Board's determination violated his right to due process

13   by relying on unchanging factors, such as the commitment offense, and that the determination

14   was not supported by some evidence.  Petition at 14-29.

15            2)     State Court Opinion

16            In denying petitioner's petition, the state court explicitly rejected his argument

17   that the Board's determination was not supported by some evidence, stating:

18            The record reflects that there is some evidence that, "the offense
             was carried out in a manner which demonstrates an exceptionally
19            callous disregard for human suffering."  (Cal. Code Regs., tit. 15,
             §2402, subd. (c)(1)(D).  This means that "the offense in question
20            must have been committed in a more aggravated or violent manner
             than that ordinarily shown in the commission of that offense." (In
21            re Scott, (2004) 119 Cal.App.4th 871, 891.)  An offense is more
             aggravated or violent when it involves torture, "as where the
22            victim was subjected to the prolonged infliction of physical pain
             through the use of non-deadly force prior to the act resulting in
23            death."  (Id. at 892.)  In this case, at approximately midnight,
             petitioner raped and sodomized the victim.  He beat her with a
24            wooden plank leaving massive traumas and injuries to her head.
             However, according to the coroner's report, these injuries did not
25            cause her death.  After raping and severely injuring the victim,
             petitioner left her to suffer for hours until he returned at 3:00 a.m.
26            to strangle her to death.  These actions demonstrate an

6

1    exceptionally callous disregard for human suffering.

2    The Court finds that there is some evidence to support the board's
      finding that "the motive for the crime is inexplicable or very trivial
3    in relation to the offense" (Cal. Code Regs., tit 15, §2402, subd.
      (c)(1)(E). The motive is inexplicable when "the commitment
4    offense does not appear to be related to the conduct of the victim
      and has no other discernible purpose. A person whose motive for a
5    criminal act cannot be explained or is unintelligible is therefore
      unusually unpredictable and dangerous." (In re Scott, supra, 19
6    Cal.App.4th at 893). Petitioner claimed he killed the victim
      because he felt angry at that time. He stated, "it's like I exploded
7    and my hand just went like this and it must have been moving fast
      and I hit her and then I just went into a rage and it's like I killed
8    her." (Reporter's Transcript, June 2, 2006, p. 16) He admitted that
      she had done nothing wrong. Because the crime was not related to
9    the conduct of the victim and served no discernible purpose, the
      Board was correct in finding that petitioner is unusually
10   unpredictable and dangerous, and, therefore, unsuitable for parole.

11   Answer, Ex. B at 2-3.

12                3)      Applicable Law

13          The Due Process Clause of the Fourteenth Amendment prohibits state action that

14   deprives a person of life, liberty, or property without due process of law. A person alleging due

15   process violations must first demonstrate that he or she was deprived of a liberty or property

16   interest protected by the Due Process Clause and then show that the procedures attendant upon

17   the deprivation were not constitutionally sufficient. Kentucky Dep't of Corrections v.

18   Thompson, 490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir.

19   2002).

20          A protected liberty interest may arise from either the Due Process Clause of the

21   United States Constitution or state laws. Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).

22   The United States Constitution does not, of its own force, create a protected liberty interest in a

23   parole date, even one that has been set. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981).

24   However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that

25   parole release will be granted' when or unless certain designated findings are made, and thereby

26   gives rise to a constitutional liberty interest." McQuillion, 306 F.3d at 901 (quoting Greenholtz

7

1  v. Inmates of Nebraska Penal, 442 U.S. 1, 12 (1979)).  In this regard, it is clearly established that

2  California's parole scheme provides prisoners sentenced in California to a state prison term that

3  provides for the possibility of parole with "a constitutionally protected liberty interest in the

4  receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of

5  the Due Process Clause."  Irons v. Carey, 505 F.3d 846, 850-51 (9th Cir. 2007) (citing Sass v.

6  Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); Biggs v. Terhune, 334 F.3d 910,

7  914 (9th Cir. 2003); McQuillion, 306 F.3d at 903; and Allen, 482 U.S. at 377-78 (quoting

8  Greenholtz, 442 U.S. at 12)).  Accordingly, this court must examine whether the deprivation of

9  petitioner's liberty interest in this case violated due process.

10          It has been clearly established by the United States Supreme Court "that a parole

11  board's decision deprives a prisoner of due process with respect to this interest if the board's

12  decision is not supported by 'some evidence in the record,' Sass, 461 F.3d at 1128-29 (citing

13  Superintendent v. Hill, 472 U.S. 445, 457 (1985)); see also Biggs, 334 F.3d at 915 (citing

14  McQuillion, 306 F.3d at 904), or is "otherwise arbitrary," Hill, 472 U.S. at 457.

15          When assessing whether a state parole board's suitability decision was supported

16  by "some evidence," the analysis "is framed by the statutes and regulations governing parole

17  suitability determinations in the relevant state."  Irons, 505 F.3d at 851.  Thus, this court must:

18          look to California law to determine the findings that are necessary
            to deem a prisoner unsuitable for parole, and then must review the
19          record in order to determine whether the state court decision
            holding that these findings were supported by "some evidence" in
20          [petitioner's] case constituted an unreasonable application of the
            "some evidence" principle articulated in Hill.
21  /////

22  Id.

23          California law requires that the Board "determine whether a prisoner is presently

24  too dangerous to be deemed suitable for parole based on the 'circumstances tending to show

25  unsuitability' and the 'circumstances tending to show suitability' set forth in Cal.Code. Regs., tit.

26  15 § 2402(c)-(d)."  Irons, 505 F.3d at 662-63.

1        The <u>Irons</u> court described the regulations as follows:

> [T]he circumstances tending to show that a prisoner is unsuitable
> include: (1) the commitment offense, where the offense was
> committed in "an especially heinous, atrocious or cruel manner";
> (2) the prisoner's previous record of violence; (3)"a history of
> unstable or tumultuous relationships with others"; (4) commission
> of "sadistic sexual offenses"; (5) "a lengthy history of severe
> mental problems related to the offense"; and (6) "serious
> misconduct in prison or jail." Cal.Code. Regs., tit. 15 § 2402(c).
> Circumstances tending to show that a prisoner is suitable for parole
> include: (1) the prisoner has no juvenile record; (2) the prisoner
> has experienced reasonably stable relationships with others; (3) the
> prisoner has shown remorse; . . . (6) the prisoner lacks any
> significant history of violent crime; . . . (8) the prisoner "has made
> realistic plans for release or has developed marketable skills that
> can be put to use upon release"; (9) "[i]nstitutional activities
> indicate an enhanced ability to function within the law upon
> release." Cal.Code. Regs., tit. 15 § 2402(d).

<u>Id.</u> at 663 n.4.

        In California, the overriding concern in determining parole suitability is public safety and the focus is on the inmate's <u>current </u>dangerousness.  <u>In re Dannenberg</u>, 34 Cal.4th 1061, 1086 (Cal. 2005); <u>In re Lawrence</u>, 44 Cal.4th 1181, 1205 (Cal. 2008).  The California Supreme Court has stated:

> [T]he Penal Code and corresponding regulations establish that the
> fundamental consideration in parole decisions is public safety
> [and] the core determination of "public safety" . . . involves an
> assessment of an inmate's *current* dangerousness. . . . [A] parole
> release decision authorizes the Board (and the Governor) to
> identify and weigh only the factors relevant to predicting "whether
> the inmate will be able to live in society without committing
> additional antisocial acts."  These factors are designed to guide an
> assessment of the inmate's threat to society, *if released*, and hence
> could not logically relate to anything but the threat *currently* posed
> by the inmate.

/////

<u>In re Lawrence</u>, 44 Cal. 4th at 1205-06 (internal citations omitted).  Accordingly, in reviewing a decision by the Board to deny parole to an inmate, "the relevant inquiry is whether some evidence supports the decision of the Board that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual

1  findings." Id. at 1212 (citing In re Rosenkrantz, 29 Cal. 4th 616, 658 (Cal. 2002); In re

2  Dannenberg, 34 Cal. 4th at 1071; In re Lee, 143 Cal.App.4th 1400, 1408 (2006)).

3          4)      Discussion

4          In finding petitioner unsuitable for parole the Board relied on the circumstances

5  of the commitment offense, petitioner's prior criminal record, his institutional behavior, and his

6  psychological report.  Answer, Ex. B, part 3 at 74-78.

7          The Board described petitioner's commitment offense as one that was "carried out

8  in a calculated manner," without any motive and in which the victim was beaten with a "two by

9  four," sexually assaulted, sodomized and, hours later, strangled to death.  Id. at 76.

10         The circumstances of the commitment offense are one of fifteen factors relating to

11 an inmate's unsuitability or suitability for parole under California law.  Cal.Code. Regs., tit. 15 §

12 2402(c)(1)-(d).  When denial is based on these circumstances the California courts have stated

13 that:

14         A prisoner's commitment offense may constitute a circumstance
           tending to show that a prisoner is presently too dangerous to be
15         found suitable for parole, but the denial of parole may be
           predicated on a prisoner's commitment offense only where the
16         Board can "point to factors beyond the minimum elements of the
           crime for which the inmate was committed" that demonstrate the
17         inmate will, at the time of the suitability hearing, present a danger
           to society if released.  [In re] Dannenberg, 34 Cal.4th [1061] at
18         1071, 23 Cal.Rptr.3d 417, 104 P.3d 783 (Cal.2005).  Factors
           beyond the minimum elements of the crime include, inter alia, that
19         "[t]he offense was carried out in a dispassionate and calculated
           manner," that "[t]he offense was carried out in a manner which
20         demonstrates an exceptionally callous disregard for human
           suffering," and that "[t]he motive for the crime is inexplicable or
21         very trivial in relation to the offense." Cal.Code. Regs., tit. 15
           § 2402(c)(1)(B), (D)-(E)."

22 /////

23 /////

24 Irons, 505 F.3d at 852-53; see also In re Weider, 145 Cal.App.4th 570, 588 (2006) (to support

25 denial of parole, the "factors beyond the minimum elements of the crime" "must  be predicated

26 on "some evidence that the particular circumstances of [the prisoner's] crime-circumstances

1   beyond the minimum elements of his conviction-indicated exceptional callousness and cruelty

2   with trivial provocation, and thus suggested he remains a danger to public safety.")

3              Such circumstances may include "rehearsing the murder, executing of a sleeping

4   victim, stalking," id., or evidence that the defendant "acted with cold, calculated, dispassion, or

5   that he tormented, terrorized or injured [the victim] before deciding to shoot her; or that he

6   gratuitously increased or unnecessarily prolonged her pain and suffering." In re Smith, 114

7   Cal.App.4th at 367.

8              Petitioner brutally beat a young girl to the point of incapacitation, raped and

9   sodomized her.  Hours passed between the initial attack and his return and yet petitioner did not

10  seek help.  Instead, he left his victim to suffer before returning only to strangle her to death.

11  Petitioner's actions were cold and dispassionate and the victim's suffering was unnecessarily

12  prolonged.  Further, there appears to be no motive for his actions.  See In re Scott, 119

13  Cal.App.4th 871, 891 (2004) (a motive which is materially less significant (or more "trivial")

14  than those which typically drive people to commit murder is more indicative of a risk of danger

15  to society if the prisoner is released.)

16             The circumstances of petitioner's commitment offense are such that they were

17  probative to the central issue of his current dangerousness when considered in light of the full

18  record before the Board.  In addition to the commitment offense the Board noted petitioner's

19  criminal history.

20             Prior to the commitment offense petitioner was convicted of grand theft, robbery,

21  resisting arrest, and two burglaries.  Answer, Ex. A, part 3 at 76.  He had previously been in

22  juvenile detention and on probation.  Id. at 77.  Further, his behavioral problems continued after

23  his incarceration for the commitment offense as evidenced by his institutional behavior, which

24  the Board noted in support of its finding of unsuitability.

25

26

1    During his incarceration petitioner earned forty-seven 115 citations.[1]  Id.

2  According to the Board, petitioner's 115s included citations for fighting, combat, and threatening

3  staff.  Id. at 19.  Forty-four citations occurred prior to 1993.  Id.  However, petitioner was cited

4  for a 115 seven years prior to the hearing for battery and just two years prior for

5  "conduct/horseplay."  Id. at 17, 77.  Under California law, institutional behavior that evidences

6  "serious misconduct" at any time is a circumstance tending to show unsuitability.  See Cal. Code

7  Regs. tit. 15, § 2402(c)(6).  Finally, the Board noted petitioner's psychological report, and an

8  apparent flaw with that report, in support of its finding of unsuitability.  Answer, Ex. A, part 3 at

9  78.

10    After giving an extensive history and analysis, petitioner's psychological report

11  concluded that "overall compared to other inmates [petitioner appears] to fall into a category that

12  represents a moderate risk for future violence in the community . . . ."  Id. at 39.  It was apparent

13  from the report however that the evaluator was only aware of petitioner's three most recent 115s

14  and not the entire forty-seven.  Id. at 38.  The Board speculated that the number and nature of

15  petitioner's total 115s may have altered the conclusion that petitioner was only a "moderate risk

16  for future violence" had the evaluator reviewed them all.  Id. at 78.  Nevertheless, even without

17  reviewing the forty-four other 115s, the psychological report still classified petitioner as a

18  "moderate risk."

19    V.    Conclusion

20    The facts of petitioner's commitment offense were probative to his current

21  dangerousness when considered in light of the full record before the Board.  That record

22  included petitioner's prior criminal record, his institutional behavior, and his psychological

23  report.

24    Prior to the commitment offense petitioner had committed serious and dangerous

25

26    [1] A 115 "Rules Violation Report" documents misconduct "believed to be a violation of
law or [that] is not minor in nature ."  15 Cal.Code Regs. § 3312(a)(3).

12

1   crimes including grand theft, robbery and burglary.  The commitment offense was exceptionally

2   horrific and disturbing.  After that experience petitioner continued to repeatedly engage in

3   serious misconduct of a violent nature during his incarceration resulting in forty-seven 115

4   citations.  Without the influence of the vast majority of those citations the most recent

5   psychological report still classified petitioner as a "moderate risk" for future violence if released.

6

7        Despite these factors the Board acknowledged petitioner's many positive

8   accomplishments and his current dedication to rehabilitation and determined that he had earned a

9   two-year denial, the shortest he had ever received.  Id. at 75-85.  Nevertheless, the Board found

10  petitioner was at that time unsuitable for parole because he was currently dangerous.

11        Based on this record there was some evidence to support the Board's finding that

12  at the time of the hearing petitioner was currently dangerous.  The opinion of the Los Angeles

13  County Superior Court affirming the finding of some evidence was therefore not unreasonable.

14  Petitioner's right to due process was not violated and he is not entitled to relief on this claim.

15        Accordingly, IT IS HEREBY RECOMMENDED that petitioner's petition for a

16  writ of habeas corpus be denied.

17        These findings and recommendations are submitted to the United States District

18  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

19  days after being served with these findings and recommendations, any party may file written

20  objections with the court and serve a copy on all parties.  Such a document should be captioned

21  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

22  shall be served and filed within ten days after service of the objections.  The parties are advised

23  that failure to file objections within the specified time may waive the right to appeal the District

24  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

25  DATED: June 30, 2009

26                                CHARLENE H. SORRENTINO
                                  UNITED STATES MAGISTRATE JUDGE

13